*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* REVELES, Minors.

UNPUBLISHED
January 20, 2022

No. 357576
Shiawassee Circuit Court
Family Division
LC No. 18-014236-NA

Before: O'BRIEN, P.J., and STEPHENS and LETICA, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor children, XR and HR, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

XR was born on October 26, 2015, and tested positive for tetrahydrocannabinol (THC) and methadone. On August 31, 2017, HR was born and tested positive for morphine, codeine, benzodiazepines, and THC. In the fall of 2017, the family came to the attention of child protective services (CPS) because of the mother's physical abuse (drug-positive infant), physical neglect, improper supervision, and threatened harm. CPS attempted to provide services to the children's mother to avoid removal. At the time of this CPS involvement, the mother was the custodial parent of the children, and respondent could not be located.

Mother repeatedly engaged in drug use. In February 2018, she was found asleep with XR, difficult to wake, and incoherent for nearly ten minutes once awakened. Despite CPS referrals for substance abuse treatment, she continued to test positive for various substances, including heroin and cocaine. If respondent could be located, he did not present a viable option to care for the

---

[1] The parental rights of the children's mother were also terminated, but she is not a party to this appeal. Our references to the mother's conduct provide context for the circumstances of the children's care.

children. The children's mother alleged that respondent also used methamphetamine and heroin and was emotionally and physically abusive. Thus, the children were placed in a voluntary safety plan with respondent's relative between February and April 2018. When respondent was eventually found, he questioned whether he was the biological father of HR, but a deoxyribonucleic acid (DNA) test confirmed his parentage.

After the services provided by CPS did not yield a positive result and mother's chronic substance abuse continued, the Department of Health and Human Services (DHHS) filed a petition to remove the children from her care. Respondent was unable to assume the care of the children because he did not have housing or a cell phone. He intermittently contacted the caseworker from different phone numbers. Respondent reported that he was homeless, had substance abuse issues, and contemplated committing crimes because jail would provide him with a place to sleep. The children were placed in nonrelative foster care in May 2018. A parent agency treatment plan (PATP) was prepared delineating the requirements and services that the parents needed to complete to care for their children.

The parental rights of respondent and the children's mother were terminated when they failed to participate in and benefit from services. In their first appeal, both parents contended that the trial court failed to adequately advise them of their rights before accepting their no-contest pleas to the trial court assuming jurisdiction. Citing *In re Ferranti*, 504 Mich 1, 22, 31; 934 NW2d 610 (2019), this Court concluded that the trial court lacked the dispositional authority to terminate their parental rights in light of its failure to apprise them of the allegations in the petition and the consequences of their pleas. *In re Reveles*, unpublished per curiam opinion of the Court of Appeals, issued July 2, 2020 (Docket Nos. 351905; 351906), pp 4-7. Accordingly, the trial court's order assuming jurisdiction of the children and order of adjudication were vacated, and the matter was remanded to the trial court for further proceedings. *Id*. at 7.

On July 16, 2020, DHHS filed a new petition, alleging that it was contrary to the children's welfare to be in the respondent's care and custody because of his "substantial criminal history, substance abuse, failure to participate and benefit from services and his current incarceration for an extended period of time." DHHS delineated the efforts that were made to prevent the separation of the children from respondent, including a "CPS investigation, foster care services, [PATP], supervised parenting time, parenting classes, psychological assessment referral, mental health counseling, substance abuse assessment/counseling, drug screens and obtaining/maintaining suitable housing and legal income."

At the time of the adjudication hearing held on August 24, 2020, respondent was incarcerated, having pled guilty to criminal charges in Shiawassee and Genesee Counties for drug offenses, retail fraud, and larceny from a person. He was sentenced in August and October 2019, and his earliest release date was in 2024. Respondent appeared at the hearing over Zoom, an online audio and web conference platform.[2] Respondent pleaded no contest to the allegations of the July 2020 petition. Accordingly, the trial court assumed jurisdiction over the children and maintained

---

[2] The trial court noted that policies were adopted by the State Court Administrative Office and Department of Corrections to prevent the spread of COVID, and therefore, it was unable to obtain respondent's presence in person.

their foster care placement, where they had been residing since the case commenced in May 2018. Despite the prior termination of parental rights, the goal of this petition was reunification.

At the adjudication hearing, the caseworker acknowledged respondent's incarceration and that the services available to him would be limited as a result. Further, respondent apprised the caseworker that programs that were offered in prison had been suspended because of the COVID pandemic. The trial court noted the difficulties with respondent's situation given his incarceration and the pandemic, but advised respondent that it would accept participation in informal self-improvement groups, stating:

> [Respondent] has got two things working against him. People in the [Department of Corrections (DOC)] always have one thing and now they have two. The first one obviously being COVID which seems to have no end to where its tentacles can reach. But the second is, the opportunity for classes and things like that. They all have different needs in prison. But there are classes and groups that meet. The one sponsored by the [DOC] and sometimes required by them, they really don't have enough openings for [inmates] so they [] determine your eligibility by how close you are to your release date. And when his release date is four years out still they may not allow him certain DOC sponsored courses.

> But [respondent], if you are serious about maintaining your parental relationship, I also happen to know there are a lot of what I would call nonsanctioned or nonsponsored groups within the penal system. Groups that are prison run. Excuse me, prisoner run. But that take on issues of being a missing father and substance abuse. So I would suggest if this ever came to a trial, I would definitely consider those as things you can do in your favor.

The trial court agreed the goal remained reunification at that point in the proceedings.

At a November 2020 hearing, the caseworker testified that she communicated with respondent through JPay, a prison communication and transfer service, that allowed her to e-mail respondent and provide updates regarding the children, including pictures. Respondent notified the caseworker that services continued to be limited in light of the pandemic. The PATP was mailed to respondent in prison on three separate dates, and respondent confirmed receipt of the agreement through JPay. Despite COVID, the trial court noted that respondent was not eligible for many services because his earliest release date was in 2024, and services were provided to prisoners scheduled for an earlier release. The caseworker and the guardian ad litem opined that termination of parental rights might ultimately be pursued. The trial court acknowledged that, "[Respondent] wasn't picked randomly to go to prison. You know, we must focus on these two children. And the time keeps going by for them and permanence is necessary." Accordingly, the trial court found that there had not "been any progress towards achieving the goal of reunification" and that it would "change the goal to adoption." It noted that permanence was necessary because the children had been in care for an extensive time period.

In March 2021, DHHS filed a supplemental petition to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), for his failure to address the barriers raised in his PATP and his continued incarceration at least through May 2024, in light of his sentences for

drug offenses, retail fraud, and larceny. Because respondent failed to provide proper care or custody, failed to provide stable housing, and failed to rectify the conditions that led to the adjudication, the petition alleged that termination was in the children's best interests.

At the termination hearing, the caseworker testified that respondent was initially in and out of jail when the children were removed. Consequently, there were periods of time when respondent was released from jail; however, he failed to participate in services whether incarcerated or not. When the PATP was initially prepared, the caseworker attempted to meet with respondent to address its content. Respondent, however, called from different phone numbers and represented that he was homeless and struggling with substance abuse. Indeed, when respondent called, he appeared to be under the influence and unable to engage in a conversation. He did not appear at scheduled family team meetings.

Ultimately, the caseworker visited respondent when he was jailed in Shiawassee County and went over the PATP with him. Respondent acknowledged that he did not have a significant family support system and thought about committing crimes so he could sleep in jail. He also claimed he never met HR, his youngest child, and requested the DNA test that later confirmed his parentage. After the termination of parental rights decision was vacated on appeal and the case was returned to the trial court, the PATP prepared following remand was essentially identical with the prior PATP. The caseworker testified that respondent was aware of what was required of him.

After respondent was sentenced to prison in August 2019, the caseworker testified that she communicated with him through JPay and regular mail.[3] Via JPay, the caseworker provided updates about and photographs of the children. Every message she sent through JPay included a stamp to allow respondent to reply to her as he could not use the JPay system to contact the children directly. However, the caseworker was willing to communicate with respondent's relatives and relay messages to the children; respondent, however, did not make any such request. In March and April of 2021, the caseworker was unable to reach respondent through the JPay system. She contacted prison officials and learned that respondent's privileges had been revoked because of bad behavior. Consequently, the caseworker mailed letters to respondent. Since February 2021, however, she had not received any response from him. And, although it was difficult for prisoners to receive services, the caseworker was advised that respondent was assigned a counselor to whom he could speak about mental-health issues. Even so, there was no indication that respondent contacted his counselor.[4]

---

[3] In his brief on appeal, respondent alleged that he was in quarantine and had no access to JPay for the entire period of his incarceration in the DOC. However, respondent's primary recitation of the facts is taken from the hearing held on December 5, 2019, where testimony was taken to support the *initial* termination of respondent's parental rights. And testimony offered to support the termination of respondent's parental rights from the supplemental petition filed after remand was held on May 11, 2021. Respondent's only recitation to the May 11, 2021 hearing was to reference the trial court's decision. Thus, respondent's statement of facts is contrary to MCR 7.212(C)(6).

[4] Respondent did not testify at the hearing.

-4-

The caseworker opined that termination was in the children's best interests in light of respondent's ongoing substance abuse issues and criminality, the children's time spent in foster care, the lack of a parental bond, and respondent's lack of participation in the PATP. The trial court stated that, although it "found a statutory basis by clear and convincing evidence," this was "not solely because he's incarcerated, but that clearly plays a role in it." Rather, the trial court found that "the problem is his own issues of addiction and criminality," and it referenced his most recent convictions involving drug use. Respondent had been out of prison at the time of the children's births, and, although "he may have been in and out of local county jails," "he really failed to make any effort to provide a safe and stable home." The trial court further found that respondent "was initially a non-participating parent," and, although it "respect[ed] his right and fortitude to change his mind and . . . participate," there had been "so much damage . . . done that it was very difficult to construct a [PATP] that could be completed." The trial court found that more than 182 days had passed since the initial disposition, and it found by clear and convincing evidence that the conditions that led to adjudication continued to exist and that there was no likelihood that they would be rectified within a reasonable time in light of the children's ages.

## II. REASONABLE EFFORTS

Respondent contends that DHHS did not make reasonable efforts at reunification in light of his incarceration, the COVID pandemic, and the lack of services that could feasibly be offered to him.[5] We disagree.

In order to properly preserve this issue, respondent was required to object to the adequacy of the services provided. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "The time for asserting the need for accommodation in services is when the court adopts a service plan . . . ." *Id.* (quotation marks and citation omitted; alteration in original). Because respondent failed to object or indicate that the services provided to him were inadequate, this issue is unpreserved. Unpreserved issues are reviewed for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2008). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (quotation marks and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

---

[5] Within the discussion of this issue, respondent alleges that DHHS violated "policy" by failing to prepare the PATP jointly with respondent and failing to meet with him about the terms of the PATP to determine what barriers he could address. Respondent abandoned these contentions by failing to identify the agency policy at issue and by failing to cite authority in support. *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020). Moreover, these contentions are contrary to the record evidence. The caseworker noted that she had difficulty locating respondent when the PATP was prepared, but she addressed the content of the PATP and incarcerated services with him when she visited him in jail and contacted him through the JPay system. Respondent does not address this evidence or identify what he would have done differently if he had participated in the preparation of the PATP.

"Under Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). Reasonable efforts begin with the creation of a case service plan aimed at rectifying the conditions that caused the child's removal and to achieve reunification. *Id*. at 85-86; *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). However, "[w]hile [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of the respondent[] to participate in the services that are offered" and "demonstrate that [he] sufficiently benefited from the services provided." *Frey*, 297 Mich App at 248. "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 468 Mich 142, 152; 782 NW2d 747 (2010). Indeed, the state may not fail to evaluate or involve a respondent, but then terminate his rights premised on his failure to comply with the case service plan at that time or in the future. *Id*. at 159-160. "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 160. Rather a parent, who is imprisoned, may fulfill the "duty to provide proper care and custody in the future by voluntarily granting legal custody to his relatives during his remaining term of incarceration." *Id*. at 161-163.

In *Mason*, the respondent was jailed for a drunk driving offense in October 2006, and his two children were left in the care of their mother until one child was found wandering alone outside. Following this incident, the children were placed with the respondent's paternal aunt and uncle. The DHHS planned a goal of reunification with the children's mother and requested supervised visits with the respondent upon his release from jail. However, because of a probation violation, the respondent's incarceration did not end in August 2007, but was extended to July 1, 2009. Nonetheless, DHHS failed to include or allow the respondent to participate in hearings. Sixteen months after his last participation, the respondent was included in a hearing. The caseworker acknowledged that the respondent presented proof that he completed education and business technology classes and also participated in weekly Alcoholics Anonymous meetings. Further, the respondent was on waiting lists to enroll in parenting classes and counseling sessions. The children's mother recently tested positive for drugs and her home was unsuitable for children. Because the children had been in care for 18 months and the respondent was incarcerated, the trial court terminated the parental rights of both parents. *Id*. at 146-152.

The *Mason* Court concluded that DHHS erred by failing to consider that the respondent had never been evaluated as a future placement or provided with services. Instead, the agency focused on the attempt to reunify the children with their mother, thereby disregarding the respondent's statutory right to be provided with services. Accordingly, the state clearly erred by failing to involve or evaluate the respondent, and then terminating his parental rights premised, in part, on his failure to comply with the case service plan. *Id*. at 159. Furthermore, the respondent's "mere present inability to personally care for [his] children as a result of incarceration" was an insufficient ground to support termination of [his] parental rights. *Id*. at 160.

In the present case, respondent submits that he was unable to complete any of the services because of his incarceration and the COVID pandemic and that he was offered no services. However, respondent began his imprisonment in August 2019, and his parental rights were terminated in December 2019, before this Court vacated the initial trial court order on procedural grounds. However, respondent did not address or participate in the resources that were available

-6-

in prison between August 2019 and December 2019, before the COVID restrictions reduced any services. Moreover, unlike in *Mason*, respondent did not offer placement of his children with relatives to provide them with proper care or custody until he could adequately address their needs. Indeed, the trial court recognized that the COVID restrictions as well as respondent's release date of 2024 reduced the resources available to him. Consequently, when the initial termination of parental rights decision was vacated and a new petition was filed, the trial court expressly apprised respondent that it would consider informal or "prisoner run" meetings on parenting or substance abuse as participation in services. Nonetheless, respondent did not notify his caseworker or the court of any such involvement in alternative resources.

The caseworker maintained contact with respondent through the JPay system and gave him updates about the children. Despite this communication, respondent did not apprise the caseworker of relative support. Instead, respondent's conduct in prison caused this specific form of communication to be eliminated by his bad behavior. Thus, the caseworker was required to send mail to respondent, but he did not answer. Although the caseworker was notified that respondent had a counselor, there was no indication that respondent attempted to fulfill any terms of his PATP through this resource.

Furthermore, although the supplemental petition was filed in July 2020, and respondent pleaded to the adjudication in August 2020, the record reflected respondent's prior history of neglect resulted in the children's placement in nonrelative foster care in May 2018. Respondent had struggled with substance abuse issues, housing, employment, and crime since May 2018. His own actions led to the incarceration. He was provided ample opportunity prior to August 2020, both in and out of jail, to participate in any type of services, but there was no evidence of participation or benefit. Indeed, respondent's bad behavior in prison led to the inability to maintain contact with the caseworker and his children, which only further limited his ability to participate in the PATP. The caseworker was respondent's only conduit to the children, and, yet, he failed to maintain this contact. There was also no evidence that respondent ever sent messages to his children through the caseworker or contacted relatives to participate, which the caseworker offered to do.

Under the circumstances, respondent failed to show plain error affecting substantial rights. DHHS made reasonable efforts to engage respondent in the PATP given the unique circumstances of this case, but there was no evidence that respondent availed himself of any accessible resources.

## III. STATUTORY GROUNDS

Respondent next asserts that the trial court clearly erred by finding that at least one statutory ground existed to support termination. We disagree.

This Court reviews for clear error the trial court's decision that there were statutory grounds for termination. *Fried*, 266 Mich App at 541. Clear error occurs when, although there is evidence supporting the trial court's decision, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re Cornet*, 422 Mich 274, 278; 373 NW2d 536 (1985) (quotation marks and citations omitted). The trial court's decision must be more than maybe or probably wrong. *In re Sours*, 459 Mich 624, 633-634; 593 NW2d 520 (1999). The reviewing court should defer to the findings rendered by the trier of fact and should consider the

trial court's special opportunity to evaluate the credibility of witnesses, MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

To terminate parental rights, a trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination listed within MCL 712A.19b has been met. *Fried*, 266 Mich App at 540-541. If this Court concludes that termination is supported by at least one statutory ground, additional grounds for the trial court's decision need not be considered. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). The supplemental petition filed in this case requested termination of parental rights under MCL 712A.19b(3)(c)(*i*), (g),[6] and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> \* \* \*

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

---

[6] We note that the trial court referenced the language of the prior version of MCL 712A.19b(3)(g) as cited and quoted in the supplemental petition submitted by the caseworker. Effective June 12, 2018, 2018 PA 58, amended MCL 712A.19b(3)(g) to substitute "without regard to intent" with "although, in the court's discretion, financially able to do so." We highlight this change to ensure DHHS's future petitions include the current statutory language and that the trial court addresses it. Because the trial court made no explicit findings of fact regarding respondent's finances outside of mentioning that he was incarcerated, it failed to determine that MCL 712A.19b(3)(g), as amended, was established by clear and convincing evidence. But because at least one statutory ground was established by clear and convincing evidence, this error was harmless. *In re HRC*, 286 Mich App at 461.

Respondent submits that, because less than 182 days elapsed, termination could not occur under MCL 712A.19b(3)(c)(*i*). Specifically, he contends that this 182-day period needed to occur between initial disposition on August 24, 2020, and the statutory review and permanency planning hearing on November 23, 2020, when "the goal was changed to adoption and a [p]etition was authorized to terminate." The plain language of the statute provides that "[t]he court *may terminate* a parent's parental rights to a child if the court finds, by clear and convincing evidence" that "[t]he parent was a respondent in a proceeding brought under this chapter, *182 or more days have elapsed* since the issuance of *an initial dispositional order . . . .*" MCL 712A.19b(3)(c)(*i*) (emphasis added). Contrary to respondent's assertion, 182 days must elapse between the initial disposition and termination, not when the *goal* is changed from adoption to termination. This statutory language is clear and unambiguous and must be enforced as written. *In re Beers*, 325 Mich App 653, 662 n 4; 926 NW2d 832 (2018). Following the appellate remand, the initial disposition occurred on August 24, 2020, and termination occurred on May 11, 2021. The termination petition was filed on March 31, 2021. The time between the initial disposition and the termination trial was 260 days, and the time between the initial disposition and the termination petition was 219 days. Accordingly, more than 182 days had elapsed.

Termination was proper, and, given that at least one statutory ground supported termination, we need not analyze any remaining statutory grounds. See *HRC*, 286 Mich App at 461.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Cynthia Diane Stephens
/s/ Anica Letica